In the

# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

IVAN BRAZIER,
LINDANI MZEMBE, and
DEREK FIELDS,

*Defendants-Appellants*.

Appeals from the United States District Court for the
Northern District of Indiana, South Bend Division.
Nos. 15-cr-87-3, 15-cr-87-2, and 15-cr-87-1 — **Robert L. Miller, Jr.**, *Judge*.

ARGUED APRIL 5, 2018 — DECIDED AUGUST 12, 2019

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In the early hours of September 8, 2015, in South Bend, Indiana, appellants Ivan Brazier, Derek Fields, and Lindani Mzembe kidnapped, shot, and ruthlessly beat Adrian Harris as he left his home. Charged with federal kidnapping and firearms crimes, the three defendants were tried and sentenced separately, but their appeals have been

2           Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

consolidated. The defendants do not challenge their convictions for the underlying crimes of kidnapping or holding Harris for ransom, and the two defendants convicted of being felons in possession of firearms do not challenge those convictions. Defendants Fields and Mzembe were also convicted and sentenced under 18 U.S.C. § 924(c) for using and discharging firearms during a crime of violence. The district court complied with circuit law applicable at the time of its decisions. Later decisions by the Supreme Court and this court, however, require us to reverse Fields' and Mzembe's convictions and sentences under § 924(c). We also conclude both of their cases should be remanded for resentencing. Those defendants have raised other challenges to their sentences that either are moot in light of our decision on the § 924(c) charges or fail to show any error or abuse of discretion by the district court. We also affirm Brazier's sentence.

I.  *Factual Background and Procedural History*

   A.  *Shooting, Kidnapping, and Ransom Demands*

Around 3:30 a.m. on September 8, 2015, Ivan Brazier, Derek Fields, and Lindani Mzembe attacked Adrian Harris as he approached his car, which was parked in front of his home. The defendants demanded money from Harris and beat him with their guns. While picking Harris up from the ground, one defendant accidentally shot him. The bullet broke apart in Harris's arm. Part of it went through his arm, and other bits lodged in his elbow.

The defendants drove Harris and his car to Brazier's house where they used duct tape to bind, blindfold, and gag him. At Brazier's, the defendants continued to pistol-whip Harris and demanded money. Nearly three hours into the kidnapping,

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269          3

the defendants forced Harris to call his sister and ask for a ransom. He said, "I need some money, they got me." His sister collected roughly $3,000 from friends and delivered it to a house near Brazier's. As two of the defendants went to get the ransom, Brazier continued to beat Harris, kicking him, pouring alcohol on his wounds, and twisting his injured arm. When the other two returned, the defendants demanded more money from Harris and continued to torture him. Harris again called his sister, pleading, "Please, Sis. Hurry up. Hurry up. I can't take it anymore."

After the second telephone call, Harris had trouble breathing because of his broken nose and swollen mouth. One attacker noticed Harris taking irregular breaths and became concerned that he would die in the house. Hearing this, Harris thought he might have a way out. He began "breathing funny" on purpose, and one defendant said, "He can't die in here." The defendants decided to drop him in an alley. They cut the duct tape from his hands and feet but kept him blindfolded. Harris asked a man on the street to help. Police were dispatched at 8:53 a.m. They arrived, and an ambulance took Harris to a hospital.

Less than one hour before the defendants released Harris, a police officer had received a tip from a confidential informant that Fields had kidnapped someone. As police gathered more information on the kidnapping, the officer who received the tip saw a car drive in front of him with Fields and Mzembe riding as passengers around 9:00 a.m. The officer stopped the car and detained its passengers. The driver—not Fields or Mzembe—agreed to allow the police to search the car. They found a pair of bloody gloves, Harris's car keys, and a black

4   Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

mask. The police also obtained a search warrant for Brazier's residence.

B. *Trials and Sentencing*

A federal grand jury indicted the defendants on charges of kidnapping, making a ransom demand, possessing a firearm in furtherance of a crime of violence, and being felons in possession of firearms. See 18 U.S.C. § 875(a) (ransom demand); § 922(g)(1) (felon in possession of firearm); § 924(c)(1)(A)(iii) (possessing firearm during and in furtherance of crime of violence); § 1201 (kidnapping). In three separate trials, juries convicted Fields and Mzembe on all counts and convicted Brazier on only the kidnapping and ransom charges.

Brazier was tried and sentenced first. One issue under the Sentencing Guidelines was how to categorize Harris's injuries under U.S.S.G. §2A4.1(b)(2)(A), which adds four levels for "permanent or life-threatening bodily injury," two levels for "serious bodily injury," or three levels for something in between. Brazier argued that he should not receive a four-level enhancement because the injury Harris suffered was not permanent or life-threatening. The court overruled the objection, explaining that the defendants had denied Harris medical care for his serious injuries and applying a four-level increase. The court sentenced Brazier to a total of 444 months in prison, with consecutive prison terms of 240 months for kidnapping and 204 months for demanding a ransom.

The court sentenced Mzembe to a total of 528 months in prison. The sentence included a combined 408 months for kidnapping, demanding a ransom, and being a felon in possession of a firearm. The court then added a mandatory

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269          5

consecutive term of 120 months (ten years) under § 924(c) for discharging a firearm in furtherance of a crime of violence.

The court sentenced Fields to a total of 656 months in prison, with 536 months for the kidnapping, ransom, and felon-in-possession charges, plus a mandatory consecutive term of 120 months for his § 924(c) conviction. In imposing the 536-month prison term, the court applied a two-level enhancement under § 2A4.1(b) because "a dangerous weapon was used" in the crime.

The district court also ordered all three defendants to pay more than $190,000 in restitution for Harris's injuries.[1] The court held Fields, Mzembe, and Brazier jointly and severally liable for that amount. Mzembe and Brazier objected to restitution under the Mandatory Victim Restitution Act on the theory that kidnapping is not a "crime of violence" subject to that Act. The district court accepted this argument but decided to order restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663.

II. *Analysis*

The parties have briefed and argued a number of issues. Developments since the district court's sentencings and our oral argument have reduced the number we must decide. First, we reverse the § 924(c) convictions and sentences for Mzembe and Fields because recent precedents establish that the underlying offenses do not qualify categorically as crimes of violence under that provision. We then reject two Sentencing Guideline challenges. Brazier alone argues that the district

---

[1] Of the total restitution amount, the court held that the first $61,491 should be paid to Harris himself, with any additional funds paid to insurers who paid for his health care and related costs.

6                Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

court erred in applying the guideline enhancement for life-threatening or permanent bodily injury. Fields' challenge to the guideline enhancement for possessing a firearm is undermined by our reversal of his § 924(c) sentence. Finally, we affirm the district court's restitution orders against all three defendants.

A. *Section 924(c), Kidnapping, and Crimes of Violence*

Fields and Mzembe challenge their convictions under § 924(c). That statute imposes a series of escalating mandatory minimum sentences for "any person who, during and in relation to any crime of violence … uses or carries a firearm …." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) provides two alternative tests for a crime of violence:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subparagraphs (A) and (B) have become known more commonly as the "elements clause" and the "residual clause," respectively. Fields and Mzembe argue that they cannot be sentenced under § 924(c) since their kidnapping and ransom offenses do not categorically qualify as crimes of violence under the elements clause and because the residual clause is unconstitutional.

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269　　　　7

Fields and Mzembe did not raise this argument at the time of their trials, so we review for "plain error." Plain-error review requires the defendants to show (1) an error that has not been intentionally waived; (2) that the error was "plain—that is to say, clear or obvious;" (3) that the error "affected the defendant's substantial rights;" and (4) that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotation marks omitted); *United States v. Olano*, 507 U.S. 725, 732–38 (1993).

The defendants did not intentionally waive this argument, so we proceed to the second requirement that the error be plain. That inquiry asks whether the error is plain at the time of appellate consideration. *Henderson v. United States*, 568 U.S. 266, 279 (2013). In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court resolved a circuit split and held that the residual clause in the § 924(c) definition of a crime of violence is unconstitutionally vague, so the defendants' convictions cannot be upheld on that basis. The other way to satisfy § 924(c) is the elements clause, but we explained in *United States v. Jenkins* that kidnapping and holding a person for ransom does not categorically satisfy the elements clause. 849 F.3d 390, 393 (7th Cir. 2017). In short, kidnapping may be accomplished without force, by "inveigling" or "decoying" a person without a threat of force, and by holding the person simply by locking him or her in a room, again without threat of violence. *Id.*, quoting 18 U.S.C. § 1201(a).[2]

---

[2] The 2017 decision in *Jenkins* was vacated by the Supreme Court and remanded for further consideration of the residual clause issue in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). That issue was ultimately resolved by the Supreme Court in *Davis*, and these later developments do

8                Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

Under the categorical method of analysis that applies to both the elements and residual clauses of the definition of crimes of violence in 18 U.S.C. § 924(c), Mzembe's and Fields' convictions for kidnapping and demanding ransom cannot support the mandatory consecutive sentences imposed under § 924(c). The categorical method focuses on the essential elements of the counts of conviction, requiring courts in essence to focus on the least culpable conduct that could violate the relevant statutes, without considering the actual facts of the defendants' conduct. In resentencing Mzembe and Fields on the remaining charges, however, the district court will of course be free to consider their actual conduct in exercising its judgment and discretion under 18 U.S.C. § 3553(a).

Mzembe and Fields ask that we limit any remand to vacating only the sentences for the § 924(c) convictions, leaving intact the sentences for the underlying offenses. That would effectively cut ten years from Mzembe's and Fields' sentences without giving the district court the opportunity to reconsider any other aspects of their cases. Sentences for multiple offenses are generally treated as "packages," so that when part of the package is removed on appeal, the district court may reconsider the overall sentencing package on remand. *Pepper v. United States*, 562 U.S. 476, 507 (2011), quoting *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005); see also *United States v. Barnes*, 660 F.3d 1000, 1007 (7th Cir. 2011); *United States v.*

---

not cast any doubt on the *Jenkins* analysis of the elements clause as applied to kidnapping and ransom offenses. See *United States v. Jackson*,—F.3d—, 2019 WL 3423363 (7th Cir. July 30, 2019) (deciding Jenkins' appeal and related cases in wake of Supreme Court decision in *Davis*, ordering resentencing without § 924(c) sentences). We have held these appeals for decision until the Supreme Court resolved the issue decided in *Davis*.

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269            9

*Rivera*, 327 F.3d 612, 614–15 (7th Cir. 2003); *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987).

Mzembe and Fields argue that the general "package" rule should not apply here because of another feature of circuit law that has been overruled by the Supreme Court since they were sentenced. Before 2017, our circuit precedent held that a judge sentencing a defendant for a § 924(c) offense and other related offenses was not permitted to take into account the mandatory consecutive sentence under § 924(c) when deciding the sentence on the other offenses. *United States v. Roberson*, 474 F.3d 432, 437 (7th Cir. 2007) (prohibiting discounts based on § 924(c) sentence in sentences for other convictions). The district court said here that it was complying with that rule when it sentenced Fields and Mzembe on the kidnapping, ransom, and felon-in-possession convictions. In *Dean v. United States*, however, the Supreme Court effectively abrogated our holding in *Roberson* and held that a sentencing court is not prevented from considering a mandatory minimum sentence under § 924(c) when deciding the sentence for underlying offenses. 137 S. Ct. 1170, 1178 (2017). *Dean* held, in essence, that § 924(c) does not prevent the sentencing judge from considering multi-count sentences as a package.

Fields and Mzembe argue that because the district judge complied with the now-abrogated *Roberson* rule, there is no need for him to take a fresh look at their sentences on the underlying offenses. The argument has logical force, to the effect that two errors (each made by complying with controlling law at the time) offset one another, so that a simple subtraction of 120 months from their total sentences will fix the problem entirely. Complicating matters, though, reversal of the § 924(c) convictions means that the two-level Sentencing Guideline

10        Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

enhancement under U.S.S.G. § 2A4.1(b)(3) for use of a dangerous weapon can properly apply to Fields and Mzembe. And complicating matters still further, the district court did not apply that enhancement to Mzembe but did apply it to Fields. At the time of sentencing, it was an error to apply it to Fields in light of the § 924(c) conviction and sentence. Under U.S.S.G. § 2K2.4, cmt. n.4, courts should not impose a weapons enhancement on an underlying crime when the defendant has also been convicted under § 924(c). Now that the § 924(c) convictions and sentences are being vacated, however, the discrepancy is reversed: that enhancement will now apply to both Fields and Mzembe. Looking at the situation in its entirety, we conclude that there have been enough changes in the legal sentencing frameworks that apply to both Fields and Mzembe that complete resentencing for both defendants is the appropriate course here.[3]

 B. *Sentencing Guideline Issues*

  1. *Life-Threatening Injury Enhancement for Brazier*

Next, we consider the district court's application of two guideline enhancements the district court applied to Brazier and Fields at sentencing. In applying the Sentencing Guideline for kidnapping, the district judge applied a four-level sentencing enhancement under U.S.S.G. § 2A4.1(b)(2)(A), finding that Harris suffered a life-threatening bodily injury. Brazier argues that he should have received only a two- or three-level enhancement because Harris's injuries were not actually life-

---

[3] Because the convictions under § 924(c) cannot stand in the wake of *Davis* and *Jenkins*, we need not address defendants' arguments that the district court erred under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Dean v. United States*, 137 S. Ct. 1170 (2017).

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269     11

threatening. The judge's characterization of those injuries as life-threatening at sentencing was a factual finding that we review for clear error. *United States v. Snyder*, 865 F.3d 490, 499 (7th Cir. 2017).

The district court did not clearly err in finding that Harris's injuries were life-threatening. The Guidelines define a life-threatening injury in a way that focuses on the dangers posed by kidnapping, and which was realized here:

> "Permanent or life-threatening bodily injury" means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent. *In the case of a kidnapping, for example, maltreatment to a life-threatening degree (e.g., by denial of food or medical care) would constitute life-threatening bodily injury.*

U.S.S.G. 1B1.1, cmt. n.1(K) (2018) (emphasis added). Under this definition, the enhancement in § 2A4.1(b)(2)(A) can apply even if the injuries inflicted on the victim would not, if properly treated, cause death on their own. The enhancement can also apply when defendants have inflicted serious harm and have exacerbated those injuries to create a risk of death by denying a victim medical treatment for those injuries.

The facts in this case would not necessarily have required the full four-level enhancement, but they provide sufficient support for the district court's factual finding that it should apply. One defendant shot Harris in the arm. The defendants then beat Harris on the head, repeatedly and with their guns,

12          Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

and kicked him as he lay helpless and bound on the floor. They aggravated his gunshot wound by pouring alcohol on it and yanking on his injured arm. After this abuse, Harris "got to breathing funny," and only after one of the defendants said, "He can't die in here" did they release him. Even though the defendants thought Harris might be dying, they did not take him to a hospital. Instead, they dumped him in an unfamiliar alley. The person who called for emergency help for Harris described his appearance: "He was drenched in blood. … [H]is shirt was all covered and everything. … He was kind of just walking around in a daze." Harris's blood was found in Brazier's kitchen on the floor, wall, and refrigerator.

Given the denial of medical care to the gunshot wound, the beatings, Harris's trouble breathing, and the blood found covering his body as well as at several scenes and on items found by investigators, the district court made the reasonable determination that Harris sustained life-threatening injuries.[4]

Brazier contests none of these facts, but he argues in effect that Harris's injury could have been worse. He also cites cases showing that the lines between the different-level enhancements under similar guideline provisions for different levels of injury are not sharp and that appellate courts stick to the deferential review of such findings under the clear-error standard. E.g., *United States v. Eubanks*, 593 F.3d 645, 651–52 (7th Cir. 2010) (affirming district court's assessment of

---

[4] On this record, the judge could have found in the alternative that Harris suffered permanent injury, which the Guidelines treat the same as a life-threatening injury. The defendants not only shot Harris, they also aggravated the injury considerably. And at the time of Brazier's trial, ten months after the kidnapping, Harris still could not use or straighten his arm.

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269          13

severity); *United States v. Samuels*, 521 F.3d 804, 816 (7th Cir. 2008) (same, collecting cases, all but one of which affirmed district court findings). These cases do not show, as Brazier argues, that Harris's injuries must be characterized as serious rather than life-threatening. If the district court had used a two- or three-level enhancement, that might also have been a reasonable application of the Guidelines, but the district court did not clearly err in applying four levels, particularly in light of the defendants' denial of medical care to their kidnapping victim. The court's factual findings are sufficient to support the enhancement, and those findings fall squarely in the province of the district court.

    2. *Dangerous-Weapon Enhancement for Fields*

As noted above, in sentencing Fields, the district court applied a two-level guideline enhancement because "a dangerous weapon was used" during the crime. U.S.S.G. § 2A4.1(b)(3). Fields challenges this enhancement because an application note directs courts not to apply "any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm" when a sentence is imposed under § 924(c). U.S.S.G. § 2K2.4, cmt. 4. Because Fields failed to object to this enhancement at sentencing, we would review for plain error. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). Because Fields has prevailed in having his conviction and sentence under § 924(c) reversed, however, the instruction in comment 4 no longer applies and will not prohibit application of the enhancement upon resentencing.

    C. *Order of Restitution*

Finally, all three defendants challenge the judge's decision to order restitution because they are indigent. Brazier raises

14           Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

alone a separate issue, a challenge to the district court's decision to hold the three defendants jointly and severally liable for the entire amount of restitution. Brazier and Mzembe objected to the order in the district court, but Fields did not. We review restitution imposed under 18 U.S.C. § 3663 for abuse of discretion, but when a defendant like Fields has forfeited an argument in district court, we review the district court's decision for plain error. *United States v. Robers*, 698 F.3d 937, 941 (7th Cir. 2012) (abuse of discretion standard); *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir. 2010) (plain error). We need not dwell on the defendants' different approaches in the district court or the higher bar for plain-error review for this issue. The district court did not act contrary to law or abuse its discretion in imposing restitution, with joint and several liability, on all three defendants.[5]

The defendants contend that the district court abused its discretion by not adequately considering their "financial resources," "financial needs," and "earning ability" as required by § 3663(a)(1)(B) before imposing restitution. As defendants acknowledge, however, the district court considered in depth their financial resources. The court expressly recognized it is unlikely they would pay the restitution in full. The court chose to order restitution despite their poverty.

The decision to impose restitution despite the defendants' likely inability to pay was within the district court's discretion under § 3663. The court noted that it was not "impossible that

---

[5] The government asks that we affirm the district court's decision under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, which makes restitution mandatory for crimes of violence. We do not reach this issue because the judge did not abuse his discretion in ordering restitution under § 3663.

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269     15

either might win the lottery" and that, in that case, each defendant should "have to share that good fortune with the man he shot, beat, bound and ransomed in 2015." The defendants point to several cases that discouraged imposing restitution on indigent defendants. See, e.g., *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir. 1996); *United States v. Lampien*, 89 F.3d 1316 (7th Cir. 1996). The problem with defendants' reliance on these cases is one we acknowledged in *United States v. Day*, 418 F.3d 746 (7th Cir. 2005): the Mandatory Victim Restitution Act changed the calculus in these earlier cases because it amended the Victim and Witness Protection Act provisions at issue in this case. Section 3664(f)(1)(A) now orders courts imposing restitution to order restitution for "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." We explained in *Day* that the amendment made clear that "the law should be concerned first with the victim's right to full restitution and the defendant's concomitant recognition of the duty to pay full restitution, albeit a largely symbolic one." 418 F.3d at 758.

Judge Miller took notice here of both the victim's right to restitution and the defendants' financial circumstances, as required by § 3663. He also acknowledged the largely symbolic nature of the restitution order. He then decided to award restitution "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant" as required by § 3664(f)(1)(A). We do not see in this record any indication that the district judge abused his discretion in imposing a substantial but likely symbolic order of restitution against all defendants.

16          Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269

Brazier alone challenges the district court's decision to hold all defendants jointly and severally liable for the full restitution amount. He argues that he should be on the hook for only a percentage of the restitution amount that is proportional to his culpability, which he calculates by comparing his sentence duration to the length of his co-defendants' sentences. Section 3664(h) provides:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

The district court exercised its discretion under § 3664(h) and chose to impose joint and several liability for all three defendants. The law did not require the district court to accept Brazier's calculation of relative culpability based on comparisons of prison sentences. And in an interesting version of trying to turn lemonade back into bitter lemons, Brazier complains that his lighter prison sentence will be unfair to him because he will probably have to start making monthly restitution payments upon his release, years before Fields and Mzembe will because of their longer prison terms.

The district court acknowledged Brazier's arguments but rejected them, finding that the facts that had led the court to impose different prison sentences did not justify different restitution awards. We find no abuse of discretion here, particularly since the focus of restitution, as distinct from prison terms, is more on compensation for the victim than on precise calibration of relative culpability among multiple defendants.

Nos. 16-4258, 17-1060, 17-1412, 17-2268 & 17-2269   17

Brazier was not convicted of a firearm offense like Mzembe and Fields, but he played an integral part in kidnapping and torturing Harris. He was present when Harris was shot. He does not argue that he was unaware that Mzembe and Fields carried guns, which might have rendered the accidental shooting unforeseeable to him. And Brazier did nothing to treat Harris's wounds. In fact, he intensified Harris's suffering by continuing to beat and torture him after the gunshot, or by at least aiding and abetting Harris's beatings.

Finally, Fields points out that the district court made a factual error in setting his restitution amount about $3,000 above the restitution amount for Mzembe and Brazier. The district court itself recognized this mistake in ordering restitution for Fields' confederates. On remand, the court must adjust the restitution amount for Fields.

Brazier's conviction and sentence are AFFIRMED. The § 924(c) convictions of Fields and Mzembe are REVERSED. Fields' and Mzembe's sentences are VACATED, and their cases are REMANDED for resentencing consistent with this opinion.